IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SEDALIA S. STUDSTILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:05cv41-C |
| ) | (WO) |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

The plaintiff, Sedalia S. Studstill, applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Studstill then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The Appeals Council's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be reversed and this case be remanded for further proceedings.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Studstill was 37 years old at the time of the hearing before the ALJ. (R. 334.) She is a high school graduate. (R. 336.) Studstill's prior work experience includes working as a cashier, telemarketer, laundry worker, jewelry store manager, stocker, and correctional

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

officer. (R. 91.) Studstill alleges that she became disabled due to social anxiety, panic attacks, hypertension, migraine headaches, and chronic back, hip and leg pain. (R. 72, 356, 361.) Following the hearing, the ALJ concluded that Studstill has severe impairments of generalized anxiety disorder, major depressive disorder, hypertension, and morbid obesity. (R. 29.) The ALJ found that Studstill "possessed the residual functional capacity to perform unskilled and low semi-skilled work at the light exertional level." (R. 29.) Relying on the testimony of the vocational expert, the ALJ concluded that there were a significant number of jobs in the national economy that the plaintiff could perform. (R. 30.) Accordingly, the ALJ concluded that Studstill was not disabled. (*Id*.)

## IV.  THE PLAINTIFF'S CLAIMS

As stated by Studstill, she presents the following issues for the court's review:

(1) The ALJ improperly discredited plaintiff's allegations of pain and psychological limitations by improperly evaluating plaintiff's credibility;

(2) The ALJ's failure to find that plaintiff's back, hip, and leg pain was a severe impairment was not supported by substantial evidence;

(3) The ALJ's finding of plaintiff's residual functional capacity is not supported by substantial evidence; and

(4) The ALJ failed to properly question the vocational expert and improperly prevented plaintiff's counsel from fully questioning the vocational expert.

(Doc. # 11 at p. 3.)

## V.  DISCUSSION

Studstill raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  However, the court pretermits discussion of each of Studstill's specific arguments because the court concludes that the ALJ erred as a matter of law and, thus, this case is due to be remanded for further proceedings.

### A.  The Plaintiff's Back Pain

The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or pyschological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(c).  The plaintiff has the "burden of showing [her] impairment is 'severe' within the meaning of the Act." *McDaniel,* 800 F.2d at 1030 - 31 ("Unless a claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.")

5

Studstill complains that the ALJ did not find her lower back condition to be a severe impairment because he failed to properly evaluate and credit her subjective complaints of pain. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is itself sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry, supra*.

Studstill alleges that she suffers pain as a result of chronic back, hip, and leg pain. Studstill testified that when "lift[ing] . . . anything heavy at all, it hurts all the way down to [her] back" and that "when [her] back starts hurting real bad, [her] legs will go numb, [her] hips hurt, so it hurts to sit in a certain position or even lay in a certain position." (R. 361.) She also testified that she suffers from "constant 24/7 pain." (*Id.*) The medical records demonstrate that Studstill presented to the Escambia Community Clinic with complaints of back pain on October 9, 2000. (R. 163.) Studstill was prescribed Lortab and Skelaxin. (*Id.*) On November 7, 2000, she returned to the clinic complaining of lower back pain and

6

received a prescription for Lortab. (R. 159.) On May 18, 2001, a physician diagnosed Studstill as suffering from chronic back pain and prescribed Percocet. (R. 152.) On August 11, 2001, Studstill received a prescription for Lortab for her complaints of back pain. (R. 151.) On October 15, 2001, Studstill presented to the clinic with complaints of back pain and was instructed to take Tylenol Arthritis. (R. 148.) On November 5, 2001, Studstill informed her physician that she suffered from lower back pain as the result of moving furniture and that Naproxen did not alleviate her pain.[4] (R. 147.)

On March 1, 2002, Studstill presented to Dr. George Ellard, a general practitioner at Quitman Healthcare, with complaints of knee and back pain. (R. 192.) Dr. Ellard determined that Studstill suffers from "some pain to palpation of the knees with good flexion and extension of the knees," that she "ambulates with [a] limp," and that her "back shows some pain with flexion, extension and lateral rotation." (*Id.*) He concluded that Studstill should be referred to an orthopedic surgeon or a pain clinic. (*Id.*) On July 19, 2002, Dr. Ellard diagnosed Studstill as suffering from chronic back pain and provided her with samples of Ultracet and instructed her to apply heat to the affected area. (R. 188-189.) Dr. Ellard noted that Studstill "refused orthopedic referral due to inability to pay." (R. 189.) On February 20, 2003, Dr. Ellard diagnosed Studstill as suffering from "low back pain chronic from disc disease." (R. 178.)

On March 15, 2003, Studstill presented to the Lakeview Community Hospital with

---

[4] On January 22, 2002, medical personnel advised Studstill to avoid long term use of Lortab while taking Xanax and instructed her to change her medication gradually. (R. 194.)

complaints of back pain. (R. 222.) An emergency room physician diagnosed Studstill as suffering from musculoskeletal lower back pain and prescribed Lortab and Flexeril. (*Id*.) On April 22, 2003, Dr. Richard V. Meadows, a consultative physician, examined the plaintiff and determined that she suffered from "back pain, probably due to degenerative disc disease." (R. 233.) Thus, the medical records indicate that Studstill consistently complained of, and sought treatment for, her lower back condition.

Additionally, to the extent that the ALJ discredited Studstill's complaints based on her failure to seek medical treatment, the ALJ failed to properly consider Studstill's inability to afford treatment. While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). During a visit to her treating physician in July 2002, Studstill refused a referral to an orthopedic specialist due to her inability to afford treatment. (R. 188.) In addition, the record indicates that Studstill frequently requested samples of medication and indicated that she was unable to afford certain prescription medications. (R. 151-152, 180, 188, 190.) Studstill also testified that she is unable to go to the pain management clinic because she cannot afford treatment. (R. 371.) When determining whether Studstill's back condition was not a severe impairment, the ALJ failed to consider whether Studstill's financial condition prevented her from seeking treatment. Thus, the court concludes that the ALJ erred as a matter of law in discrediting Studstill's testimony based on her failure to seek medical treatment.

Because the ALJ failed to properly consider Studstill's subjective complaints of lower back pain along with the medical records demonstrating that Studstill sought treatment for her condition when she was financially able to do so, the court cannot conclude that the ALJ's finding that Studstill's lower back condition is not severe within the meaning of the regulations is supported by substantial evidence.

### B.  Characterization of the Plaintiff's Mental Condition

Studstill asserts that the ALJ mischaracterized her testimony regarding her daily activities in order to discredit the medical evidence regarding her mental condition. An ALJ has a duty to fully and fairly develop the record. *See*, *e.g.*, *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990); *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). The ALJ must conscientiously probe into, inquire of, and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981).

In this case, the ALJ found that Studstill's "ability to engage in a wide array of activities of daily living, including the performance of work activity (while not at the substantial gainful activity level) is persuasive evidence that the claimant's alleged symptoms resulting from her physical and mental impairments are not totally disabling." (R. 27.) Relying on Studstill's testimony, the ALJ mischaracterized the evidence to support his conclusion. For example, the ALJ found that Studstill is "able to do her own shopping" (*Id.*); Studstill, however, testified that she "would prefer to be reclusive" and that she only goes shopping once a month to acquire necessities or whenever her mother "drags her to the

grocery store."[5] (R. 353-355, 362.) The ALJ's finding that Studstill "occasionally went to a karaoke bar" is also a distortion of the plaintiff's testimony. (R. 27.) While Studstill stated that she sometimes goes to a karaoke bar, she also testified that the bar is a "little . . . redneck . . . hole-in-the-wall" and that she leaves when there are a lot of people. (R. 355-56.) In addition, Studstill testified that she does not socialize, that she has one friend,[6] that she suffers from panic attacks while outside the home, and that she does not want to be around people. (R. 339, 356, 362, 365.) In order to fulfill his obligations, the ALJ must, at the very least, resolve the inconsistencies in the testimony, rather than selectively choosing items to support his decision. The law is well settled in this Circuit that the ALJ must consider all the evidence. *Cowart*, 662 F.2d at 735-36.

The ALJ also failed to fully develop the record with respect to Studstill's reported agoraphobia. The medical records demonstrate that Studstill's mental condition has progressively worsened since a physician at the Escambia Community Clinic first diagnosed Studstill as suffering from generalized anxiety disorder with panic attacks in December 2000. (R. 158.) On January 9, 2001, Studstill reported that Buspar[7] did not effectively relieve her anxiety. (R. 157.) Medical personnel discontinued Studstill's prescription for Buspar and

---

[5] She also testified that, when her boyfriend was alive, she would wait in the car while he shopped for essentials. (R. 354.)

[6] Studstill stated that she occasionally babysits her friend's children. (R. 365.) The court notes that a claimant's ability to care for children does not necessarily indicate that a claimant is able to work outside the home. *See Pitts v. Commissioner of Social Security*, [No. 01-16397, May 1, 2002] (11th Cir. 2002) (unpublished opinion).

[7] Buspar is a sedative which is primarily used to help people with sleeping problems. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Buspar%AE.

prescribed 20 milligrams of Paxil.[8] (*Id.*) At some point between December 2000 and February 2001, Studstill was prescribed Xanax.[9] (R. 156-157.) On May 18, 2001, a physician renewed Studstill's prescription for Xanax.[10] (R. 152.) On August 11, 2001, Studstill reported "breakthrough panic attacks" and her prescription for Paxil was increased to 40 milligrams. (R. 151.) On October 15, 2001, Studstill reported that she was suffering from depression and her prescription for Xanax was renewed. (R. 148.) On November 5, 2001, a physician renewed Studstill's prescriptions for Paxil and Xanax. (R. 147.)

On January 22, 2002, Studstill was referred to Stewart Webster Rural Health Clinic for the treatment of anxiety. (R. 194.) Medical personnel recommended that Studstill gradually change her anxiety and pain medications. (*Id.*) On February 12, 2002, Dr. George Ellard renewed Studstill's prescription for Xanax. (R. 191.) On March 1, 2002, Dr. Ellard prescribed 50 milligrams of Zoloft[11] for the treatment of Studstill's anxiety. (R. 192.) On April 16, 2002, Studstill's prescription for 100 tablets of Zoloft was renewed. (R. 190.) On July 11, 2002, Studstill was given samples of Zoloft. (*Id.*) On July 19, 2002, Studstill reported that Zoloft was not effective and that she was suffering from approximately one

---

[8] Paxil is used to treat anxiety or depression. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Paxil%AE.

[9] Xanax is used to treat anxiety or panic disorder. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Xanax%AE.

[10] Studstill was prescribed two refills of thirty Xanax tablets. (R. 152.)

[11] Zoloft is used to treat depression or anxiety. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Zoloft%AE.

panic attack a week. (R. 188.) Studstill received prescriptions for Zoloft and Klonopin.[12] (*Id*.) On August 23, 2002, Studstill reported that she was having "difficulty with verbally lashing out at people for no reason" and that Klonopin was "helping some." (R. 186.) Studstill's prescription for Zoloft was discontinued and she was prescribed Wellbutrin.[13] (*Id*.) On September 10, 2002, Studstill presented to the clinic with complaints of anxiety and depression and was prescribed Zoloft. (R. 185.)

In October 2002, Studstill was referred to Spectracare for treatment of her mental condition. (R. 212.) On December 4, 2002, Studstill was diagnosed with major depressive disorder and generalized anxiety disorder. (R. 218.) A psychiatrist recommended that Studstill attend group sessions, use relaxation techniques, and that monitoring of her medication should continue. (*Id*.)

On April 29, 2003, Studstill's boyfriend reported to the Stewart Webster Rural Health Clinic that Studstill was threatening to commit suicide and that she was not taking her medication as directed. (R. 306.) On May 6, 2003, Studstill reported that she was taking Zoloft on an as needed basis. (R. 304.) The physician's assistant assessed that Studstill should continue her prescriptions for Klonopin and Zoloft for the treatment of depression and anxiety. (R. 305.)

On June 27, 2003, a psychiatrist at SpectraCare also determined that Studstill should

---

[12] Klonopin is indicated for the treatment of panic disorder, with or without agoraphobia. *See* http://www.fda.gov/cder/foi/label/2001/17533s31lbl.PDF#search='klonopin'.

[13] Wellbutrin is an antidepressant. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Wellbutrin%AE

continue her medication regime and increase her social interaction by attending group therapy. (R. 283.) A drug use profile from SpectraCare indicates that Studstill was prescribed Zoloft, Lithium,[14] and Seroquel[15] on several occasions in 2003.[16] (R. 292.) On July 9, 2003, Studstill reported to medical personnel at the Stewart Webster Rural Health Clinic that she had received a prescription for 300 milligrams of Lithium from Dr. Lopez. (R. 302.) On August 7, 2003, Studstill presented to the clinic appearing mildly distressed and anxious with complaints of chest tightness and trouble breathing. (R. 301.) On September 25, 2003, Studstill presented to Dr. Fernando Lopez, a psychiatrist at SpectraCare, reporting that Zoloft had not decreased her anxiety. (R. 281.) Studstill's prescription was changed to Seroquel. (*Id*.) On October 23, 2003, Dr. Lopez ordered that Studstill decrease her dosage of Seroquel to 25 milligrams and also advised that she continue her prescription for Lithium. (R. 282.) On October 29, 2003, Studstill presented to the Stewart Webster Rural Health Clinic requesting different medication for depression and informed medical personnel that she was weaning herself off Seroquel and that she was taking Lithium. (R. 300.) Studstill

---

[14] Lithium's primary use is for the treatment of people with extreme mood changes from anger to depression to elation. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Lithium%20Citrate.

[15] Seroquel is classified as an antipsychotic medication and is used to treat patients that suffer from delusions, hallucinations, unorganized thought, and hostility. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Seroquel%AE

[16] The photocopy of the Abbeville SpectraCare Drug Use Profile is incomplete. (R. 292.) Therefore, the court is unable to discern the specific dates that the medication was prescribed. Thus, it is impossible for the court to determine the significance of these medical records. *See Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985) (An ALJ has a duty to develop a full and fair record.).

was provided samples of Seroquel and Lamictal[17] and attended group therapy sessions at least twice in March 2004. (R. 293-295.)  Thus, it is clear that Studstill has consistently sought treatment and that her mental condition has progressively worsened since December 2000.

    The consultative examiner, Dr. Doug McKeown, conducted an examination of Studstill on April 17, 2003.  (R. 226.)  Dr. McKeown noted that Studstill appeared "somewhat anxious" and that she "report[ed] a generalized anxiety response pattern associated with being away from her familiar environment at home."  (R. 227.)  The consultative psychologist found that Studstill demonstrates a depressive disorder and a generalized anxiety disorder with reported agoraphobia.  (*Id.*)  He also noted that "it would appear that limited attention has been paid to [Studstill's] psychiatric condition and in addition to medication she would benefit from counseling" and suggested that Studstill "follow up with the mental health clinic."  (R. 228.)

    It is apparent from the record that, although Studstill was sent for a consultative examination, no further evaluations or testing was obtained to determine the extent of Studstill's mental condition.  Despite the evidence in the record and without securing additional information, the ALJ found that Studstill's "agoraphobic tendencies" do not preclude her from working.  (R. 23.)  Specifically, the ALJ determined that "[Studstill's] mental impairments of generalized anxiety disorder and major depressive disorder cause the

---

[17] Lamictal is primarily used to treat certain types of seizures and is sometimes prescribed to treat pain syndromes. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Lamictal%AE.

claimant only mild limitations in work related functions such as maintaining concentration and attention for extended periods of time, ... responding to customary work pressures, and moderate limitations in her ability to relate to other people." (R. 22.) The problem with the ALJ's determination is that he substitutes his judgment for that of the consultative examiner's and other medical experts' opinions.[18] It is not within the ALJ's purview to substitute his judgment and interpretation of the plaintiff's mental condition for that of the Commissioner's own examining consultant.[19] *See Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992).

Moreover, after carefully reviewing the medical records, the court concludes that the ALJ erred in failing to fully develop the record regarding Studstill's mental condition. Notwithstanding substantial evidence in the record indicating that Studstill has received extensive treatment for her anxiety disorder and the consultative examiner's finding that more focus should be placed on her psychiatric condition, the ALJ took no further steps to explore Studstill's reported agoraphobia by securing additional psychiatric evaluations or

---

[18] The court notes that the ALJ also substituted his judgment for that of a medical expert when he concluded that Studstill's back pain is caused by her obesity. (R. 26, 376.) Although the ALJ found that "the claimant has a documented problem with obesity and that weight reduction has been routinely recommended" (R. 26), nothing in the record demonstrates that Studstill's back pain is caused by her obesity or that medical personnel have advised her to lose weight in order to improve her back condition.

[19] The court notes that the ALJ's finding that Studstill has "agoraphobic tendencies" conflicts with his determination that she is moderately limited in her ability to relate to others and has only mild limitations in responding appropriately to customary work pressures. "Agoraphobia" is defined as "severe and pervasive anxiety about being in situations from which escape might be difficult or avoidance of situations such as being alone outside of the home, traveling in a car, bus, or airplane, or being in a crowded area." *See Mental Health: A Report of the Surgeon General*, www.surgeongeneral.gov/library/mentalhealth/chapter4/sec2.html. The court questions how an individual who exhibits "agoraphobic tendencies" is able to respond appropriately in a work setting.

Case 1:05-cv-00041-CSC   Document 14   Filed 12/09/05   Page 16 of 18

testing. Where a consultative examination is needed to make an informed decision, it is error for an ALJ not to order such an evaluation. *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). The ALJ is not entitled to ignore either the law or medical opinion.

There is sufficient evidence from which the ALJ should have concluded that it was necessary to require additional evaluation and/or testing before rendering a decision regarding Studstill's mental impairments, and the ALJ's failure to obtain that additional evidence requires that this case be remanded for further proceedings. *See Reeves, supra.* Without such medical information, the ALJ could not make a determination as to whether Studstill is disabled.

Next, the ALJ failed to consider whether Studstill suffered any side effects from her prescribed medications. As previously discussed, the medical records demonstrate that Studstill has been prescribed a variety of medications to treat her mental condition, including Paxil, Xanax, Zoloft, Klonopin, Wellbutrin, Lithium, and Seroquel. During the hearing, Studstill testified that she has tried approximately twenty different anxiety medications over the past four years and that "some of them make [her] sick" and that "some of them make [her] feel like [she is] stoned or something [and that] some of them don't do anything at all . . . [b]ut you have to go through all of them . . . until the side effects wear off to see if they're going to work." (R. 357.) She also testified that, although she currently has prescriptions for Lithium and Seroquel, she "[does not] like what they do to [her]" and that she only takes this medication when she has "a bad panic attack because . . . they just zonk her out." (R. 363.) In addition, Studstill reported to mental health personnel that Seroquel causes her to

feel "too sedated." (R. 282.) The medical records also indicate that Studstill has received several prescriptions for pain medication, including Lortab and Percocet. (R. 147, 151-52.) Studstill reported that Lortab causes her to feel sleepy and "sick to her stomach." (R. 112, 152.) The ALJ ignored evidence of these numerous medications, and thus, failed to consider how the medications may combine to affect Studstill's ability to work. In light of this evidence, the court concludes that the ALJ failed to adequately develop the record regarding the effect of Studstill's medications on her ability to work. It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability. *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). On remand, the ALJ should consider all of the effects of Studstill's medications on her ability to perform work.

### C. The Questioning of the Vocational Expert

Now that the court has concluded that the ALJ failed to properly consider the evidence or develop the record, doubt is necessarily cast upon the ALJ's determination that Studstill can perform other jobs in the national economy. A vocational expert's testimony is fatally deficient if the ALJ's hypothetical questions fail to precisely set out all of the claimant's impairments. *See Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (citing with approval *Stephens v. Sec'y of Health, Ed. & Welfare*, 603 F.2d 36, 41-42 (8th Cir. 1979)). In addition, the ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe – either singularly or in combination – to create a disability. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's mental impairments must be considered in combination, even when the impairments

considered separately are not severe. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).

A review of the record clearly demonstrates that the ALJ's hypothetical questions to the vocational expert were improper. As should be apparent from the court's opinion, the ALJ could not possibly have questioned the vocational expert properly. For example, in his questioning of the vocational expert, the ALJ did not ask the vocational expert to consider Studstill's back condition as a severe impairment, the extent of her mental impairment, or the effect of her medications on her ability to perform work. On remand, the Commissioner should insure that the ALJ fulfills his responsibility to include all of the plaintiff's impairments in his questioning of the vocational expert.

## VI. Conclusion

Accordingly, it be and is hereby

ORDERED that this case be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

Done this 9th day of December, 2005.

/s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE